# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1703 | **DATE** | 3/27/2000 |
| **CASE TITLE** | | Popoca vs. Apfel | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order.  For the reasons set forth on the attached order, plaintiff's motion for summary judgment (11-1) is granted, and The Commissioner's motion for summary judgment is denied (14-1). The Commissioner's decision is reversed, and the case is remanded to the Commissioner for further findings consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| | Notices mailed by judge's staff. | | | MAR 2 8 2000 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| | OR | courtroom deputy's initials | | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PATRICIA POPOCA,      )
                    )
       **Plaintiff,**      )
                    )
       **v.**                  )      **Case No.**      **99 C 1703**
                    )
**KENNETH S. APFEL, Commissioner,**    )
**Social Security Administration,**    )
                    )
       **Defendant.**      )

DOCKETED

MAR 28 2000

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Patricia Popoca is 44 years old. She has had epilepsy since she was a child, experiencing both grand mal and petit mal seizures; she also has bronchial asthma. Additionally, at 5' 4" tall and 285 lbs., Popoca is considered obese. Although Popoca's epilepsy and asthma are controlled to a large extent with medication, Popoca continues to suffer eye seizures (repetitive closing of the upper and lower eyelids) regularly. Despite these impairments, Popoca, who graduated from high school and took a few college courses, was able to pursue a career as a certified nurse's assistant or CNA. As a CNA, Popoca helped feed, dress and bathe hospital and nursing home patients. She worked as a CNA from 1980 to 1987 and then did a short stint as a bus aide for the Ryder Bus Company, assisting with keeping school children quiet and in their seats. Popoca then returned to work as a CNA from 1989 to February 15, 1993. This last date is significant: it is the date Popoca alleges her conditions became disabling (the "date of onset" in social security parlance). Popoca has had no gainful employment--in fact, she has had no employment at all-- since February 15, 1993, when Popoca was fired from her last CNA job because of excessive

absenteeism caused by the problems she was having with her eyes.

On November 9, 1995, Popoca filed an application with the Social Security Administration for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), claiming that her epilepsy (including the eye seizures) and asthma rendered her unable to work. On January 30, 1996, the Administration notified Popoca that her claim for DIB and SSI was denied because she was neither disabled nor blind under their rules. The Administration made that decision without the benefit of any evidence from Popoca or her treating physician, Dr. Holmberg:

> To properly evaluate your condition and how it prevents you from working, current medical information was needed. To obtain this evidence a letter was sent to doctor Holmberg. He did not respond to our request. Additionally, you did not contact us and tell us why this information could not be obtained.
>
> \* \* \*
>
> We have not been able to obtain enough evidence to evaluate your claim. Additional evidence is needed. Because this evidence could not be obtained, a disabling condition cannot be found. Record, p. 80.

Popoca requested reconsideration of the denial of benefits and provided the Administration with additional evidence: she provided the records of her treating physician, Dr. Holmberg, as well as some records from the doctor who treated her in the 1970s, Dr. Traisman. Additionally, Popoca submitted to an examination with Dr. G. Vashi, who assessed and diagnosed Popoca for the Administration. Finally, the Administration had the benefit of a "residual functional capacity assessment" prepared by Dr. J. Villaflor for the Administration; Dr. Villaflor reviewed Popoca's records, including Dr. Vashi's diagnosis report, and reached conclusions for the Administration about Popoca's ability to return to the work force. After reviewing this evidence, on July 30, 1996, the Social Security Administration denied Popoca's

2

request for reconsideration, noting that although Popoca had some medical problems stemming from her epilepsy, asthma and eye problem, "there is no evidence of any disabling factors that would prevent you from returning to your past job. Based on your description of the job of school bus aide, we have concluded that you have the ability to return to that type of work." Record, p. 87.

Popoca requested a hearing before an Administrative Law Judge, and her case was assigned to Judge Irving Stillerman, who conducted a hearing in Popoca's case on June 19, 1997. ALJ Stillerman had the benefit of all of the evidence described above--Popoca's medical records, Dr. Vashi's report and Dr. Villaflor's report. In addition, he was able to observe Popoca first hand: Popoca, who was experiencing her eye problem at the time, testified at the hearing about her conditions and her relevant work experience. Popoca was the only witness to testify at the hearing, and she was questioned by both her attorney and the ALJ. After hearing Popoca's testimony, and after considering the medical evidence in the file, ALJ Stillerman concluded that Popoca was not disabled within the meaning of the Social Security Act because she was "capable of returning to her past relevant work as a certified nursing aide and, in the alternative, performing other work in the economy which exists in significant numbers." Record, p. 37. Based on these findings, in a decision issued September 16, 1997, ALJ Stillerman denied Popoca's claim for benefits.

Popoca requested review of the ALJ's decision, and her attorney prepared a well-reasoned, six-page brief in support of her request. Additionally, her mother wrote a letter on her behalf, appealing to the Appeals Council to try to understand the nature of her daughter's condition and to award her the benefits her mother felt she deserved. Nevertheless, on January

3

25, 1999, the Appeals Council denied Popoca's request for review, making the ALJ's decision the final decision of the Commissioner. The Appeals Council notified Popoca that if she still wished to pursue her claim for benefits, she could file a complaint in the United States District Court. And Popoca did just that. The parties have filed cross motions for summary judgment; to resolve them the Court must decide whether substantial evidence in the record supports the ALJ's finding that Popoca is not disabled under the Act.

Disability insurance benefits are available only to claimants who can establish "disability" under the terms of the Social Security Act. "Disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §423(d)(1)(A). The Commissioner of Social Security uses a five-step sequential analysis to determine whether a claimant is disabled:

(1) the Commissioner first asks whether the claimant is presently unemployed;

(2) if she is, the Commissioner next asks whether the claimant's impairment is severe;

(3) if it is, the Commissioner asks whether that impairment meets or equals one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) if it does, the impairment is conclusively disabling, but if it does not, the Commissioner asks whether the claimant is able to perform her past relevant work;

(5) if the claimant is not able to return to her old job, the Commissioner asks whether in light of the claimant's age, education, job experience and functional capacity, the claimant is capable of performing other work that exists in the national economy. *See* 20 C.F.R.

4

§404.1520(a) - (f); *Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999); *Anaya v. Apfel*, No. 99 C 3830, 2000 WL 222640, at *6 (N.D. Ill. Feb. 24, 2000). The claimant bears the burden of establishing a disability in steps one through four of this process; if the claimant satisfies her burden, the burden shifts to the Commissioner to show, in step five, that the claimant has the ability to perform jobs other than her past work. 42 U.S.C. §423(d)(2); 20 C.F.R. §404.1520(f). *See also Anaya*, 2000 WL 222640, at *6. Moreover, if the claimant makes the requisite showing in steps one through three, she will automatically be found disabled; if she is unable to satisfy step three, she must demonstrate that she lacks the residual functional capacity to perform her prior jobs. *Henderson v. Apfel*, 179 F.3d 507, 512 n.3 (7th Cir. 1999).

ALJ Stillerman, whose decision became the Commissioner's final decision, correctly tailored his factual findings to this formula. First, he found that Popoca was unemployed and had performed no substantial gainful activity since February 15, 1993. *See* Record, p. 34. Second, he found that she suffered "from a 'severe' impairment, but only as that term is understood and utilized within the Social Security Act." *Id.* at 35. Third, the ALJ found that Popoca's "signs, symptoms, laboratory findings and other relevant evidence do not indicate the existence of a medical condition that meets or equals the specific clinical requirements of any section [of the Listing of Impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1]." *Id.* Fourth, the ALJ found that Popoca was "capable of returning to work as a certified nursing aide." *Id.* at 37. Alternatively, the ALJ concluded that if the burden shifted to the Commissioner to identify other work in the regional economy that Popoca could perform, he would be able to identify a significant number of jobs that fit that bill. *Id.* The ALJ acknowledged that Popoca's residual functional capacity assessment noted exertional and nonexertional limitations, but he

5

concluded that those limitations "have only a minimal effect on – and do not significantly compromise – the occupational base of sedentary light and medium jobs" that Popoca could perform. *Id.* Having found that Popoca could perform her past relevant work or, alternatively, a wide range of other jobs, the ALJ found that Popoca was not disabled and therefore not entitled to the benefits she sought. *Id.* Popoca has asked the Court to review the ALJ's decision.

Judicial review of the Social Security Commissioner's final decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." "Substantial evidence" is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Powers v. Apfel*, --- F.3d ---, No. 99-2513, 2000 WL 291181, at *3 (7th Cir. March 20, 2000). The district court "may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Powers*, 2000 WL 291181, at *3. But the Court must "not act as an uncritical rubber stamp of the Commissioner's decision" either. *See Howell v. Sullivan*, 950 F.2d 343, 347 (7th Cir. 1991). Under this standard, the Court cannot affirm the ALJ's decision that Popoca could perform her past relevant work or, alternatively, a significant number of other jobs in the regional economy.

"Even if the claimant is unemployed and his disability is severe, an ability to perform the claimant's previous job disqualifies him from receiving [disability insurance benefits.]" *Nolen v. Sullivan*, 939 F.2d 516, 518 (7th Cir. 1991). "[A]n ALJ cannot describe a claimant's job in a generic way . . . and conclude, on the basis of the claimant's residual capacity, that she can return to her previous work. Instead, the ALJ must list the specific physical requirements of the

previous job and assess, in light of the available evidence, the claimant's ability to perform these tasks." *Id.* (citing *Stittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984); S.S.R. 82-62 (1982). *See also Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991) (S.S.R. 82-62 imposes an affirmative duty on ALJ to make findings of fact as to physical and mental demands of the past job/occupation). The ALJ in Popoca's case failed on both counts: he failed to list the specific physical requirements of Popoca's previous job, and his findings about Popoca's ability to perform those tasks are not supported by the record evidence.

ALJ Stillerman categorized Popoca's past job generically ("light to medium in exertional requirements and semi-skilled in nature," *see* Record, p. 37)[1] and failed to list any specific requirements of the job. Yet he concluded that she was able to return to work as a CNA:

> In reviewing the requirements for her past work, I note no limitation or restriction in her current residual functional capacity which would preclude the return to this occupation. Thus, I find that the claimant is capable of returning to work as a certified nursing aide. Record, p. 37.

The ALJ may very well have considered some of the requirements of her past job--indeed, his decision suggests that he must have considered some sort of listing of requirements. But this Court is "not in a position to draw factual conclusions on behalf of the ALJ." *Prince*, 933 F.2d at 603.

The Commissioner concedes that the ALJ failed to list the requirements of her old job but argues that he was not required to do so because he stated that his finding was based on the

---

[1]In *Nolen*, the ALJ classified the claimant's previous job as "unskilled at the light exertional level, as provided by 20 C.F.R. 404.1567 and 419.967"; the ALJ did not describe the tasks the job entailed. The Seventh Circuit held that this finding fell short of *Strittmatter*'s demand for facts describing claimant's previous duties. 939 F.2d at 519.

7

description Popoca gave of that job. Popoca's hearing testimony on this subject would not have been sufficient to allow the ALJ to determine one way or the other whether her exertional and nonexertional limitations would have impacted her ability to do that job. The only testimony relating to the job description was the following exchange:

> Q [by ALJ]: You helped fee[d] [the patients] and bathe
> them and things like that?
> A: Right

Record, p. 52. In the documents she filed with the Administration, Popoca provided a more detailed description of her CNA job. *See* Record, p. 103-04. But this description does not support the ALJ's conclusion. For example, Popoca wrote that she dressed, fed, and showered or bathed the nursing home residents, which involved physically lifting patients from their beds and transferring them to chairs or to the bath and back. Record, p. 103. She indicated that the job required her to walk and stand eight hours per shift, bend and reach constantly, lift over 100 lbs. on occasion and lift and carry over 50 lbs. frequently. *Id.* at 104. These requirements are inconsistent with what the ALJ concluded Popoca could tolerate: he found that she could lift only as much as 50 lbs. on occasion and only as much as 25 lbs. more frequently. *Id.* at 36. In short, the Commissioner's suggestion that the ALJ relied on Popoca's description of her work is unconvincing.

Popoca argues that the record does not support the ALJ's findings about her residual functional capacity (her ability to return to her CNA job), and the Court agrees. Dr. Villaflor, a state agency physician who assessed Popoca's residual capacity, concluded that Popoca could occasionally lift and carry 20 lbs. and frequently lift and carry 10 lbs., that she could stand and walk 6 hours per 8-hour workday, that she could kneel occasionally (not frequently), that she

8

should avoid climbing ladders, and that she should avoid concentrated exposure to fumes, odors, gases, poor ventilation, etc. Record, p. 141-42, 144. Dr. Villaflor's assessment specifically stated that his conclusions were consistent with those of Popoca's treating physicians. Record, p. 146. The ALJ did not expressly reject Dr. Villaflor's findings, and he articulated no basis for doing so. Nor did he offer any basis for his findings, which found Ms. Popoca to be significantly more capable than all of the physicians on file. The ALJ simply seemed to substitute his judgment for that of Dr. Villaflor, and this was improper. *See Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992) (without reference to medical reports or opinions, it is improper for ALJ to determine that plaintiff's medical conditions could not produce the limitations described by the consulting physician). The record does not contain evidence--let alone substantial evidence--to support the ALJ's findings concerning Popoca's residual functional capacity.

Popoca argues that the ALJ fundamentally misunderstood the nature of her condition. He failed to consider her eye seizures as a symptom of her epilepsy, treating them instead as some distinct non-severe problem. Even if this is true--and we think it is--the eye seizures alone would not require a finding of disability under step three of the five-step evaluation discussed above, and the ALJ would still have to consider whether Popoca could perform her past job or other jobs in the regional economy. Under the regulations, the seizures would have had to occur at least once a week to be considered disabling. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, at 11.03 (1997). Popoca testified at the hearing before the ALJ that the seizures occurred "sometimes three to six times a month." Record, p. 55. And Dr. Holmberg's notes contain one entry from June 1996 stating that Popoca told him she had as many as six episodes per month. Record, p.

152. But Popoca's other medical records indicate that she had the episodes only once or twice a month, *see* record, p. 171, and she told Dr. Vashi in May of 1996 that she experienced the episodes once or twice a month, *see* record, p. 128. Dr. Villaflor's assessment is consistent with the once or twice a month characterization, *see* record, p. 147. The ALJ noted the inconsistency between the records and Popoca's testimony and found that Popoca's testimony lacked credibility on this issue. *See* Record, p. 36. "[W]e will not disturb the Commissioner's credibility determinations so long as they find some support in the record and are not 'patently wrong.'" *Lanfear v. Apfel*, No. 99 C 2654, 2000 WL 198791, at *4 (N.D. Ill. Feb. 14, 2000) (citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)). Because the record supports the ALJ's determinations concerning the inconsistencies in Popoca's statements, and because the record provides some support for a finding that the episodes occurred less frequently than is required by the regulations, the Court would not reverse or remand based on this argument. *See Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996) ("When the decision of [the first-line] tribunal is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless.").

We do find fault, however, with the ALJ's failure to take into account the impact of Popoca's eye seizures on her ability to return to the work force, whether as a CNA or as something else. Dr. Holmberg stated that Popoca would miss work six times per month because of her eye seizures; such absenteeism would obviously affect the number of jobs available to Popoca. *See Connor v. Shalala*, 900 F.Supp. 994, 1003-04 (N.D. Ill. 1995) (demonstrating that frequent absences from work, in that case two absences per month on a consistent basis, would

limit the number of jobs claimant could get and keep). The ALJ rejected Dr. Holmberg's opinion that Popoca's eye problem would require her to miss work approximately six times per month because this opinion was beyond Dr. Holmberg's knowledge and expertise. Record, p. 35. Additionally, it would seem that Dr. Holmberg's conclusion in this regard was based on Popoca's statement that the seizures occurred three to six times a month, which the ALJ found lacked credibility. While we agree that there may have been substantial evidence for the ALJ to conclude that Popoca might not miss this much work, we find that the ALJ had no basis to reject altogether the notion that she might miss some amount of work because of her ailments. Again, absent some medical evidence or a physician opinion that this was the case, the ALJ was wrong to conclude just by looking at Popoca that she could work as he described. *See Scivally*, 966 F.2d at 1077.

The ALJ seemed unreasonably to disregard all of Popoca's testimony because of the inconsistency concerning how often the seizures occurred. He found that Popoca "did not offer specific instances of functional limitations or restrictions that have occurred to her while she suffers an episode of her fluttering eyelids." Record, p. 36. Unless he disbelieved everything she said at the hearing--which he appears not to have done--and rejected the doctors' assessments, this simply cannot be true. Popoca testified at the hearing that when she is having an episode: her eyes won't stay open, Record, p. 55; she cannot talk well, *id.*; she cannot cook, use the stove or do anything in the kitchen, Record, p. 59-60; she cannot see where she is going and has to be careful walking, Record, p. 60; and she cannot shower, *id.* These are all specific instances of functional limitations caused by the eye seizures. The ALJ failed to consider how any of these limitations might affect Popoca's ability to perform either her past job or alternative jobs in the

11

regional economy. And he failed to consider whether those limitations might cause Popoca to miss some amount of work on a consistent basis, which could have impacted the number of jobs available to her. *See Connor*, 900 F.Supp. at 1003-04. This would seem to have been especially significant because Popoca was fired from her last job because of excessive absenteeism caused by her seizures. In making findings concerning Popoca's capacity to perform her old job or any other job in the regional economy, the ALJ must consider the aggregate effects of all of Popoca's ailments, including her eye seizures. *See Green v. Apfel*, --- F.3d ---, No. 99-1878, 2000 WL 198213, at *3 (7th Cir. Feb. 22, 2000). Because he failed to do so, we must send the case back to the Commissioner.

In conclusion, the Court finds that the ALJ erred in failing to make findings of fact concerning the physical and mental requirements of Popoca's past relevant work and that his finding concerning her ability to perform her past relevant work was not supported by substantial evidence. The Court further finds that the ALJ failed to consider the effects of Popoca's eye seizures on her ability to return to the work force, whether as a CNA or as something else. Plaintiff's motion for summary judgment (11-1) is granted, and the Commissioner's motion for summary judgment (14-1) is denied. The Commissioner's decision is reversed, and the case is remanded to the Commissioner to determine the demands of Popoca's past job and, based on the evidence available, her ability to meet them; should the Commissioner determine that Popoca cannot perform her past job, he will also need to make findings concerning Popoca's ability to perform other jobs in the regional economy, given her combination of impairments.

Dated: March 27, 2000

MATTHEW F. KENNELLY
United States District Judge